# EXHIBIT A

OLES MORRISON | OLES MORRISON RINKER BAKER LLP

Sam E. Baker, Jr.
baker@oles.com

May 20, 2016

**Via Email**

International Chamber of Commerce
International Court of Arbitration
SICANA Inc.
1212 Avenue of the Americas
9th Floor
New York, NY 10036
ica9@iccwbo.org

### REQUEST FOR ARBITRATION

On September 12, 2013, JCM Northlink, LLC (JCM) entered into the Rental Agreement (R.A.) with The Robbins Company (TRC) to rent a tunnel boring machine (TBM) for a period of 22 months to bore approximately 18,435 feet of tunnel for the construction of the Northgate Link Extension Contract N125. On April 12, 2016, JCM terminated the Rental Agreement for default. JCM submits its claim for at least $40,242,052.20 in damages as a result of TRC's performance on this contract.

Claimant

JCM may be contacted at: 123 Northeast 94th St Seattle, WA 98115, phone number 206-384-4700. Oles Morrison Rinker & Baker, LLP represents JCM in this arbitration. Oles Morrison may be contacted through Sam E. Baker, Jr. at 701 Pike St Suite 1700 Seattle, WA 98104, phone number: 206-623-3427, fax number: 206-682-6234, email: baker@oles.com.

Respondent

TRC may be contacted at 29100 Hall Street Solon, Ohio 44139, phone number 440-248-3303, fax number 440-248-1702. Mr. Ian Frank of Frantz Ward has represented TRC during the course of the Rental Agreement. He may be contacted at 200 Public Square Suite 3000 Cleveland, OH 44114, phone number: 216-515-1633, fax number: 216-515-1650, email: ifrank@frantzward.com.

Arbitration Agreement

The Rental Agreement between the parties contains an arbitration clause, which states:

> Unless both **Parties** mutually agree otherwise, it is agreed that any dispute, controversy or claim arising out of or in connection with this **Agreement,** including any question regarding its existence,

**OLES.COM**

International Chamber of Commerce
Arbitration Request
May 20, 2016
2

> validity or termination, which cannot be resolved amicably, will be
> finally settled by binding arbitration under the Rules of Arbitration
> of the International Chamber of Commerce by one or more
> arbitrators appointed in accordance with such Rules. These Rules
> are deemed to be incorporated by reference in this **Agreement**. The
> language of the proceedings will be English. The arbitration shall
> take place in Seattle, Washington, USA. The decision of the
> arbitrator(s) shall be final and binding on the **Parties**. The **Parties**
> may not assert any claims, demands, damages or remedies other than
> those expressly permitted by applicable law, and the express terms
> of this **Agreement,** nor shall the arbitrator(s) have any authority to
> consider such claims or demands, nor award any damages, remedy
> or relief inconsistent with or expressly prohibited by the terms of
> this **Agreement**.

R.A. Article 20.2.

Claim Allegations

JCM's claims include but may not be limited to:

### Failure to Provide a TBM Free From Latent Defects

TRC contracted to provide a TBM that would "be free from all latent defects in materials or workmanship." R.A. Article 16.2(i). The TBM TRC supplied to JCM contained numerous latent defects including but not limited to:

- Pinion housings being out of round
- Main bearing teeth with stress fractures
- Improperly programmed Variable Frequency Drives
- Motors that were never auto tuned and magnetized
- Undersized segment hoist
- Transformer overheating and tripping
- Screw gate #1 failing to fully close
- Foam lines and foam ports constantly plugging
- EPB sensors constantly failing
- Profibus modules that continually failed
- Leaky manlock door
- Undersized VFD for the TBM belt
- Tail void grout plugging
- Improper design of the gantries
- PLC program errors

International Chamber of Commerce
Arbitration Request
May 20, 2016
3

#### Failure to Exercise Due Care and Diligence

TRC also promised to "execute Scope of Supply with due care and diligence in accordance with the provisions of this **Agreement**." R.A. Article 3.1 (emphasis in the original). TRC failed to perform in accordance with this clause. The Scope of Supply included:

- Supply of equipment by Robbins to JCM
- One Robbins EPBM with a ~6.48m bore diameter along with a Back-up System having arrangements for muck haulage by continuous conveyor
- 2 man-months of on-site Field Service for commissioning the TBM and training of the on-site personnel in the operation of the Robbins supplied Equipment. The service technicians supplied by Robbins should be competent in EPB tunneling and the design of this Robbins TBM with previous experience on a minimum of 2 EPB projects.

R.A. Article 2.1-3

In addition to failing to provide a machine without latent defects as required under R.A. Article 16.2(i), TRC also failed to exercise due care and diligence in the TBM's component construction as required under R.A. Article 3.1. Had TRC exercised due care and diligence, the TBM would not have the quantity and type of defects that JCM experienced. For example, the main bearing bull gear teeth are cracked. JCM asserts this cracking is the result of improper heat treatment during manufacturing. Main Drive #1 failed because the pinion housings imparted a non-uniform load on the outboard pinion bearing, which drastically shortened the bearing life and eventually caused the bearing to crack and fail. JCM asserts the pinion housings were manufactured out of round and/or the mating surfaces were not square or concentric with the main drives.

TRC also failed to exercise due care and diligence in providing estimates to JCM of the number of Onsite First Time Assembly (OFTA) hours it would take to erect the TBM. Rather than the 86 work days proposed to complete the OFTA, the TBM required 135 days. This resulted in an increase of 49 work days – labor and time JCM should not have been required to provide and was unable to anticipate due to TRC's inadequate estimate. The TRC employee that provided the OFTA estimate was not normally responsible for providing OFTA estimates and admitted this estimate should have come from a field manager.

TRC's failure to assign appropriate personnel to perform job functions permeated other areas of the project as well. By way of example, TRC failed to exercise due care and diligence in providing personnel to supervise the TBM's assembly and operation. During assembly, TRC's jobsite personnel asserted that the rotary union, which was full of sand from the TBM's previous job, did not need to be cleaned prior to installation. The rotary union has a critical seal which prevents muck from the mixing chamber from entering the TBM control area. Failure to clean the rotary union would result in the seal functioning improperly and potentially causing harm to the JCM personnel operating the TBM. In fact, the rotary union was required to be replaced when the

International Chamber of Commerce
Arbitration Request
May 20, 2016
4

TBM arrived at the first refurbishment point because it continually leaked. TRC personnel also directed JCM personnel to attempt to force the Main Drive #1 assembly into the pinion housing despite the fact that the two parts did not fit. This procedure resulted in needing to dry ice the assembly in order to get the pieces to fit together. During operation and refurbishment, the personnel TRC provided to supervise the TBM were inexperienced and caused significantly more damage to the machine in their attempts to repair it. TRC's TBM repeatedly plugged and was not capable of moving through dry sand. TRC sent a highly touted operator to instruct JCM on how it was improperly operating the machine. TRC's operator badly plugged the TBM shortly into his first shift. The TBM's Variable Frequency Drives (VFDs) were not operating correctly even at a slow production rate. When TRC attempted to diagnose the problem, TRC's own actions caused the drives to fail requiring the complete replacement of all 6 VFDs.

TRC failed to exercise due care and diligence in providing complete and accurate manuals and drawings. TRC provided incomplete and inaccurate manuals and drawings, which impacted JCM's ability to construct and operate the TBM. Often, JCM and TRC were required to engineer solutions on site as a result of these problems. TRC's substantial and frequent failures to exercise due care and diligence breached the contract and damaged JCM.

JCM reserves the right to amend this request upon further investigation during the course of discovery.

<u>Damages</u>

JCM has incurred at least $40,242,052.20 in damages as a result of TRC's breach of contract.

<u>Special Master</u>

JCM requests a special master be appointed to oversee discovery relating to inspections, examination and testing of the TBM, a significant piece of evidence in this dispute. The parties have attempted to mutually determine the scope and timing of the testing to be performed on the TBM but have been unable to reach an agreement. JCM proposes Rick Lovat be nominated as the special master.

<u>Request for Relief</u>

JCM requests relief in the form of:

- At least $40,242,052.20 in damages as a result of TRC's breach of contract;
- A determination that any and all limitation of liability clauses in the Rental Agreement failed their essential purpose and do not apply to this claim; and
- A special master be appointed to oversee discovery relating to inspections, examination, and testing of the TBM.

International Chamber of Commerce
Arbitration Request
May 20, 2016
5

Arbitration Particulars

    JCM requests three arbitrators.  JCM nominates John S. Hunt as an arbitrator.  Mr. Hunt may be contacted at:

ADR Services, Inc.
P.O. Box 467
Anacortes, WA 98221
(360) 293-0525
Fax: (360) 588-1550
Cell: (206) 953-6015
johnshunt@comcast.net

Per R.A. Article 20 of the Rental Agreement, the venue for the arbitration shall be Seattle, Washington.  Per R.A. Article 28.1, Washington state law shall apply.  The language of the arbitration shall be English.

Respectfully Submitted,

OLES MORRISON RINKER & BAKER LLP

Sam E. Baker, Jr., Esq.
Bradley L. Powell, Esq.
Attorneys for JCM Northlink, LLC

4824-8145-6433, v. 2

## Rental Agreement No: 082613-R between JCM Northlink, LLC and The Robbins Company for the Supply of a Tunnel Boring Machine and Associated Equipment

INDEX

| Articles | Description | Page No. |
|---|---|---|
| 1 | Definitions and Interpretation | 1 |
| 2 | Scope of Supply | 3 |
| 3 | Obligations of Robbins | 3 |
| 4 | Obligations of JCM | 3 |
| 5 | Obligations of the Parties | 4 |
| 6 | Variations, Changes and Claims | 5 |
| 7 | Commencement and Time of Completion | 7 |
| 8 | Supply Conditions | 7 |
| 9 | Inspection | 7 |
| 10 | Price | 7 |
| 11 | Terms of Payment | 8 |
| 12 | Default of Robbins | 8 |
| 13 | Force Majeure | 9 |
| 14 | Default of JCM | 9 |
| 15 | Termination of Main Agreement | 10 |
| 16 | Warranty by Robbins | 10 |
| 17 | Taxes | 10 |
| 18 | Termination | 11 |
| 19 | Consequences of Termination | 11 |
| 20 | Arbitration and Settlement of Disputes | 11 |
| 21 | Validity | 12 |
| 22 | Amendments, Effectiveness | 12 |
| 23 | Exchange of Documents and Maintenance of Confidentiality | 12 |
| 24 | Indemnification by Robbins | 12 |
| 25 | Indemnification by JCM | 13 |
| 26 | Maximum Liability under this Agreement | 13 |
| 27 | Representations of Parties | 14 |
| 28 | Governing Laws and Jurisdiction | 14 |
| 29 | Miscellaneous | 15 |
| 30 | Notices and Instructions | 16 |
| | Annexes | |
| Annex-1 | Supply schedule | |
| Annex-2 | Equipment Specifications Robbins Technical Proposal #050313-1-EPB-T-REV 3 | |
| Annex-3 | Robbins Commercial Proposal #050313-1-EPB-C-REV 3 | |
| Annex -4 | Drawings P6271 Rev 3 and P6272 Rev 3 | |
| Annex -5 | Letter of Intent (LOI) | |
| Annex -6 | Rental Equipment Return Requirements | |
| Annex -7 | Main Agreement Section 31 71 19 - Tunnel Excavation By Tunnel Boring Machine | |
| Annex -8 | CN 0001-13 Volume 4 - Geotechnical Baseline Report | |

Exhibit A
Page 1 of 16

## Rental Agreement No: 082613-R between JCM Northlink, LLC and The Robbins Company for the Supply of a Tunnel Boring Machine and Associated Equipment

This **Rental Agreement** No: 082613-R made on this 12th day of September, Two Thousand and Thirteen in Seattle, Washington by and between:

**JCM Northlink, LLC** – a company duly constituted and existing under the laws of United States of America and having its office located at 120 – 10th Avenue East, Seattle, Washington 98102, USA, hereinafter referred to as "**JCM**", represented by Mr. Glen Frank in his capacity as "Project Manager", who is duly empowered and authorized for the purpose hereto of the ONE PART;

AND

**The Robbins Company** – a company duly constituted and existing under the laws of the United States of America, having its office located at 29100 Hall Street Solon, Ohio, USA, hereinafter referred to as "**Robbins**", represented by Mr. Tyler Sandell in his capacity as "Sales Manager", who is duly empowered and authorized for the purpose hereto of the OTHER PART;

Both and/or each of them hereinafter shall be referred to as "**the Parties**" or "**the Party**", as the case may be.

WHEREAS:

(a)  **Sound Transit** (hereinafter referred to as the "**Owner**" has awarded the construction of the **Northgate Link Extension Contract N125** hereinafter referred to as the **Tendered Work**) to JCM;

(b)  **JCM** is a reputed and experienced Limited Liability Company engaged in heavy construction business including construction of large diameter metro and utility tunnels and having requisite experience to satisfy the qualification criteria prescribed by the **Owner**;

(c)  **Robbins** is a manufacturer of Tunnel Boring Machines (TBMs) of all diameters with Back-up and matching systems for removal of excavated material;

(d)  **JCM** and **Robbins** entered into a supply **Agreement** as initiated by a Letter of Intent (LOI) issued to **Robbins** by JCM dated 26 August 2013.

NOW THEREFORE, in consideration of the premises and the mutual covenants hereinafter contained the parties agree as follows:

Article 1: Definitions and Interpretation

1.1  **Definitions**: In this **Agreement** (as hereinafter defined) the following words and expressions shall have the meanings hereby assigned to them:

  1.1.1.  "**Agreement**" means the present **Rental Agreement** for supply of **Equipment**.

  1.1.2.  "**Contractor**" means JCM Northlink, LLC (JCM).

  1.1.3.  "**Delivery Milestone**" means the date the **Equipment** is ready for EXW delivery per INCO terms 2010

1.1.4. "Engineer" means the person appointed by the Owner to act as Engineer for the purposes of the Main Agreement.

1.1.5. "Equipment" means the machinery, plant and equipment supplied by Robbins for boring the Project, which includes the Robbins EPBM and Back-up System as noted in Annex-3.

1.1.6. "Main Agreement" means the Agreement entered into between the Owner and the Contractor for execution of the Tendered Work.

1.1.7. "Optional Equipment" means auxiliary equipment, accessories or systems priced optionally and/or not included in the scope of supply.

1.1.8. "Owner" means Sound Transit;

1.1.9. "Persons" means any individual, corporation, partnership, association, joint stock company, trust, unincorporated organization, joint venture or the Government;

1.1.10. "Price" means the price as set forth in the Agreement payable by JCM to Robbins pursuant to the terms of this Agreement for supply of Equipment by Robbins to JCM;

1.1.11. "Purchase Price" means the price to purchase the Equipment in lieu of Rental per this agreement.

1.1.12. "Project" means the boring of the Sound Transit Northlink N125 Project;

1.1.13. "Supply Schedule" means the itemized scope of supply and pricing for the Equipment that Robbins shall supply to JCM on a rental basis as mutually agreed between the Parties;

1.1.14. "Site" means the site/sites to be provided by JCM, where the Equipment is to be deployed;

"Specifications" means the description, technical standards, and operational requirements, of the Equipment to be supplied by Robbins as contained in Annex-2 hereto; in addition to the relevant sections of the Contract Documents in the Main Agreement. These are limited to: Section 31 71 19 - Tunnel Excavation By Tunnel Boring Machine and CN 0001-13 Volume 4 - Geotechnical Baseline Report

1.1.1. "Tendered Work" means the works to be executed by JCM, as a Contractor, under the performance of the Main Agreement.

1.1.2.

1.2 Headings in this Agreement are for convenience only and shall not affect or be taken into consideration in the interpretation or construction of any provision of the Agreement.

1.3 Words imparting persons or Parties shall include firms, corporations and any entity organization having a legal existence or presence.

1.4 Words imparting the singular only also include the plural and vice versa where the context so requires. Similarly, all words indicating masculine only shall also include the feminine and vice versa, where the context so requires.

1.5 Any acceptance, consent or approval required under or pursuant to any provision of this Agreement shall be valid and effectual only if it is in writing signed by the authorized representative of the concerned Party duly authorized in that respect, or their designee.

1.6 This Agreement supersedes all prior written, oral, express or implied understandings, promises, representations and agreements reached and/or executed by the Parties in relation to the subject matter of this Agreement.

1.7   All Annexes hereto form an integral part of this **Agreement.**

1.8   This **Agreement,** and the **Contract Documents** attached and referenced herein, shall be ranked in the following order of precedence: (1) the **Agreement,** (2) Annex 1 **Supply Schedule,** (3) LOI dated August 26th, 2013, (4) Robbins Commercial Proposal #050313-1-C Rev 3 and (5) Equipment Specification (Robbins Technical Proposal #050313-1-EPB-T-REV 3, (6) Rental Equipment Return Requirements, (7) Section 31 71 19 - Tunnel Excavation By Tunnel Boring Machine and (8) CN 0001-13 Volume 4 - Geotechnical Baseline Report  the event of any discrepancy or conflict between the **Contract Documents,** the higher ranking document, as specified in this Article 1.8, shall prevail.

## Article 2: Scope of Supply

2.1   The Scope of Supply shall include the supply of **Equipment** by **Robbins** to JCM as per the **Supply Schedule (Annex 1).**

2.2   One (1) **Robbins** EPBM with a ~6.48m bore diameter along with a Back-up System having arrangements for muck haulage by continuous conveyor.

2.3   **Robbins** shall supply two (2) man-months of on-site Field Service for commissioning the TBM and training of the on-site personnel in the operation of the **Robbins** supplied **Equipment.** The service technicians supplied by Robbins should be competent in EPB tunneling and the design of this Robbins TBM with previous experience on a minimum of 2 EPB projects. To be invoiced separately

2.4   In case **JCM** and/or the **Owner** request additional or different **Equipment** to that described in this **Agreement, Robbins** will study the possibility of carrying out the request and, where possible, will inform as soon as possible of the cost and delivery impact of the request. Both **Parties** will sign an amendment to this **Agreement** prior to proceeding with the request for the supply of additional or different **Equipment.**

## Article 3: Obligations of Robbins

3.1   **Robbins** shall, execute Scope of Supply with due care and diligence in accordance with the provisions of this **Agreement.**

3.2   **Robbins** shall deliver the **Equipment** as specified in Annex 1 and Annex 2 and Annex 4.

3.3   Title of the equipment during the rental period shall remain in the name of The Robbins Company

## Article 4: Obligations of JCM

4.1.1   JCM shall be obliged to make timely payment to **Robbins** per the terms of Article 11 of the **Agreement.**

4.1.2   JCM shall complete all the enabling works necessary to accept delivery of the **Equipment** ready for site assembly.

4.1.3   It shall be presumed that the persons working under the control of JCM shall be acting pursuant to its sole supervision and direction.

4.2 JCM shall operate and maintain the **Equipment** in strict accordance with **Robbins** manuals, written instructions and/or recommendations, and such strict compliance shall be an express condition precedent to JCM asserting any claim pursuant to Article 16 of this **Agreement** or otherwise pursuing any damage, remedy or relief relating to any alleged defect in the **Equipment.**

4.3 JCM must return the **Equipment** to **Robbins Seattle** area storage facility not later than 36 months from its date of delivery EXW **Robbins** workshop.  In the case that the **Equipment** is not returned to **Robbins** complete and per the terms of this **Agreement,** for any reason

whatsoever, including JCM not returning the **Equipment** within 36 months of its delivery EXW **Robbins** workshop, or the total loss or destruction of the **Equipment**, or **JCM's** simply electing to purchase the **Equipment** at any time in lieu of continuing to rent the Equipment, the parties agree that **JCM** shall purchase the **Equipment** from **Robbins** for a price of $9,650,000 plus the price of any included **Optional Equipment** (the "**Purchase Price**"). In that event, 95% of rental payments received into **Robbins'** account per Article 11 of this **Agreement** shall apply toward payment of the **Purchase Price** of the **Equipment**. **JCM** shall pay the balance due to **Robbins** within 30 days of receipt of **Robbins** invoice for the balance due for purchase of the **Equipment**. **JCM** shall provide a bond as security for such payment, from a source acceptable to Robbins, in the value of $6,000,000. The bond shall be put in place prior to delivery of the **Equipment** EXW and is a condition for the loading of the **Equipment** EXW **Robbins** workshop. The bond shall remain valid for a period of 42 months from the **Delivery Milestone** or when **JCM** returns the Equipment to Robbins per the terms of the Agreement or whichever comes sooner.

4.4 JCM shall be responsible to maintain the equipment and return the **Equipment** at completion of the rental period in accordance with Annex 6

4.5 It is noted that the Cargo Preference Act also known as "Ship America" is required per the Main Agreement. JCM accepts that the equipment is to be delivered EXW **Robbins** workshop in the USA. Should MARAD not accept that the delivery complies with "Ship America" under the main agreement, both **JCM** and **Robbins** will work together to provide the necessary documentation as required by MARAD for compliance. Any additional costs associated with MARAD compliance for Ship America will be to the account of **JCM**.

## Article 5: Obligations of the Parties

5.1 Neither **Party** shall, without the prior written consent of the other **Party** (which consent, notwithstanding the provision of Sub-Article 1.5, shall be at the sole discretion of the other **Party**), assign the **Agreement** or any part thereof, or any benefit or interest therein or there under, other than by:

    5.1.1    a charge in favor of **Robbins'** bankers of any monies due or to become due under this **Agreement**, or

    5.1.2    assignment to a **Party's** insurers (in cases where the insurers have discharged the **Party's** loss or liability) of the **Party's** right to obtain relief against any other party liable, except a **Party** to this **Agreement**, it being understood that the **Parties** mutually waive all rights of subrogation for the insurances required by this **Agreement**, or

    5.1.3    transfer of a **Party's** contractual rights and obligations made pursuant to a corporate merger and / or restructuring.

    It is further clarified that nothing in this clause shall prevent **Robbins** from sub-contracting any aspect of its performance of this **Agreement** to its authorized **Persons** provided that **Robbins** is responsible for its obligations in respect of such sub-contracted activity, including manufacturing of **Equipment** and entitled to its rights under this **Agreement**. Also, even after sub-contracting part of the activity, only **Robbins** shall have privity of **Agreement** with JCM with respect to the subject matter of this **Agreement**.

## Article 6: Variations, Changes, Claims, Delivery LDs

6.1    **Variations and Changes (Price and Time)**

    6.1.1    JCM may, without invalidating the **Agreement**, and prior to completion of the portion of the **Tendered Work** utilizing the **Equipment**, may, by written notice,

Exhibit A
Page 5 of 16

request **Robbins** to supply additional or different **Equipment** to that which is set forth in this **Agreement**, to carry out modifications or variations to the **Equipment**, or to perform additional or different services. Within a reasonable time after receiving such written notice, **Robbins** shall provide a written summary of the additional costs and expenses, together with reasonable overhead and profit, relating to the requested changes, modifications or variations, as well as any anticipated extensions of, impacts to, or other delays or disruptions affecting the **Supply Schedule** and/or **Delivery Milestone**. JCM shall be required to pay **Robbins** for the reasonable costs and expenses related to the performance of any requested changes, modifications or variations to the **Equipment** or associated services, plus reasonable overhead and profit, by executing an Amendment or Change Order to the **Agreement** that equitably adjusts the **Price** set forth in Article 10.  **Robbins** shall also be entitled to an equitable adjustment of the **Equipment** delivery deadline and other related dates set forth in the **Delivery Milestone** to fairly and reasonably adjust such dates in accordance with the additional time necessary to perform the necessary changes, modifications or variations.  In the event the **Parties** are unable to agree upon and execute an Amendment or Change Order that fairly and equitably adjusts the **Price** and **Delivery Milestone** to compensate **Robbins** for the cost and time impacts of the requested change, **Robbins** shall not be obligated to perform any such changes, modifications or variations.  It is understood by the **Parties** that the execution of an Amendment or Change Order is an express condition precedent to **Robbins'** obligation to proceed with any such request.

6.1.2    The rates, if any, stated in this **Agreement** and its attached Annexes, shall apply to the valuation of any requested changes, modifications or variations, where applicable.  If no applicable rates are reflected herein, or otherwise agreed by the **Parties**, changes, modifications and variations shall be calculated using the costs, expenses and charges actually incurred or reasonably anticipated by **Robbins**, plus reasonable overhead and profit.

6.1.3    Time Extensions and Delays.  If **Robbins** is delayed or disrupted at any time in the design, manufacturing, engineering, or delivery of the **Equipment**, or performance of any other services or obligations required by this **Agreement**, by (a) agreed changes, modifications or variations; (b) delays beyond Robbins control to completion, removal and shipment of the Equipment from its current project  (c) any Force Majeure event, including without limitation, tidal wave, lightning, earthquake, cyclone, hurricane, labor dispute, fire, legal strikes or lock-outs, war, riots, or acts of public enemies including terrorists, or other abnormally adverse weather conditions; and/or (d) any act or omission of JCM, the **Owner** or any third party for whom they are responsible, then the dates relating to the performance of **Robbins'** obligations as set forth in the **Supply Schedule** shall be extended by Change Order for a reasonable time.

6.1.4    Concurrent Delay – In addition to the excusable delays and disruptions described in Article 6.1.3, **Robbins** shall not be responsible for any delay or disruption in fulfilling any of its obligations under this **Agreement**, and shall be entitled to a Change Order extending any applicable deadline, if JCM fails to perform any of its obligations related to acceptance of the **Equipment** or otherwise providing all necessary and adequate equipment and other resources to accept delivery of the **Equipment**. **Robbins** shall be responsible only for delays caused by **Robbins**, and only to the extent such delays are not concurrent with or do not precede a delay or disruption caused by JCM, the **Owner**, or a third party for whom they are responsible.

6.1.5    **Robbins** shall be entitled to additional compensation to fully and fairly compensate it for any additional costs or expenses incurred as a result of delays or disruptions caused by JCM, the **Owner**, or any subcontractor, supplier, agent or other third-party for whom JCM is responsible.

6.2      **Delivery Penalty – Liquidated Damages (LD)**

Page 4

6.2.1     JCM shall prepare the jobsite to begin receiving the **Equipment** on the **Delivery Milestone.**

6.2.2     A delivery penalty (LD) shall apply for each day of delay do to the fault of **Robbins** to provide the TBM ready for shipment after the **Delivery Milestone.** Due to the difficulty in computing the actual material loss and damages that will result from a delay in the TBM delivery, it is determined in advance and agreed by the parties hereto to cover all damages and loss, that **Robbins** will pay JCM the amount of **$1,000 USD (One thousand US Dollars)** per calendar day, after the **Delivery Milestone,** until the TBM is ready to ship to the job site or for one hundred forty (140) calendar days (whichever comes sooner).  If the TBM is not ready to ship within one hundred forty (140) days, up to a maximum of one hundred fifty five (155) calendar days after the Delivery Milestone, **Robbins** will pay JCM the amount of **$5,000 USD (Five thousand US Dollars)** per day until the TBM is ready to ship to the job site. If the TBM is not ready to ship within one hundred fifty five (155) calendar days after the Delivery Milestone, **Robbins** will pay JCM the amount of **$10,000 USD (Ten thousand US Dollars)** per day until the TBM is ready to ship to the job site.

6.2.2.1 **Robbins** will not be obligated to pay penalties if the jobsite is not ready to accept the Equipment and commence assembly and commissioning.

6.2.2.2 LDs for late delivery shall not apply if Robbins provides any missing components after the **Delivery Milestone** which does not delay the site assembly.

## 6.3     Claims

6.3.1     **Robbins** shall provide written notice, within fourteen (14
Days after discovery of any information that supports a claim for additional costs or time, of its intention to pursue a claim for an equitable adjustment of the **Price, Supply Schedule** and/or **Delivery Milestone.** The written notice shall include sufficient details regarding the circumstances relating to the claim, as well as the additional costs or expenses that are known or anticipated at the time of the notice, to permit **JCM** to respond.

6.3.2     The **Parties** shall endeavor to resolve any claims for which **Robbins** has provided written notice.  In the event the **Parties** are unable to reach an amicable agreement, any disputes or disagreements regarding a claim for additional costs or expenses, equitable adjustments and extensions of the **Delivery Milestone,** shall be determined in accordance with Article 20 of this **Agreement.**

## 6.4     Differing or Changed Site, Subsurface or Concealed Conditions

6.4.1     During the performance of this **Agreement,** including the delivery and/or testing of the **Equipment,** and during the performance of the tunneling portion of the **Tendered Works,** if subsurface, latent physical, or otherwise concealed physical conditions are encountered at the **Site** or elsewhere on the **Project** that differ materially from those indicated in this **Agreement** or other relevant contract documents, including the **Main Contract,** or differ materially from those represented in writing by JCM, the **Owner,** or their consultants, or if unknown subsurface or concealed physical conditions of an unusual nature, that differ materially from those ordinarily found to exist and generally recognized as inherent in construction activities of the character provided for in this **Agreement** are encountered, either JCM or Robbins shall provide prompt written notice to the other of such conditions and their anticipated impact on the **Price , Supply Schedule** and/or **Delivery Milestone.** **Robbins** shall be entitled to an equitable adjustment of the **Price** and **Supply Schedule** and/or **Delivery Milestone** that fairly and adequately compensates **Robbins** for any delays, disruptions, interferences or additional costs and expenses, plus

reasonable overhead and profit, incurred by **Robbins** as a result of the differing or changed subsurface/concealed conditions.

### Article 7: Commencement and Time of Completion

7.1   The **Delivery Milestone** date is May 13th, 2014 contingent upon this **Agreement** being signed by both parties not later than September 13th, 2013 and payment being made per sub-article 11.1.1 by wire transfer not later than September 20th, 2013.

7.2   Delay in payments, delay in finalizing the contract or JCM not being ready to receive the **Equipment** ready for site assembly is cause for an extension in the **Delivery Milestone**.

### Article 8: Supply Conditions

8.1   **Robbins** shall supply the **Equipment** EXW Robbins **Seattle area** Workshop or point of manufacture.

8.2   JCM, at its own cost, shall carry out all freight and insurance of all supplies.

8.3   All costs towards handling EXW Robbins Seattle area Workshop and transportation of the **Equipment** to the **Site** shall be the responsibility of JCM. Should **Robbins** elect to manufacture the Equipment in another location, JCM will only be liable for the equivalent freight cost and delivery time for transport from Seattle area shop.

8.4   All costs for removal, cleaning, packing and freight in accordance with Annex 3 after completion of the project or rental period shall be at the cost of JCM.

### Article 9: Inspection

9.1   **Robbins** shall ensure that JCM shall have, at all reasonable times pursuant to a pre-agreed time schedule, access for the purpose of inspection to **Robbins'** manufacturing facilities during the design, engineering, manufacture, testing of various components of the **Equipment.**

9.2   **Robbins** shall also keep JCM informed, through a pre-agreed format of report, of the progress of manufacture of **Equipment** in the premises of **Robbins** to enable JCM to keep a track of the progress in manufacture of the **Equipment**.

### Article 10: Price

10.1    The prices for the supply are in USD as noted in Article 2 are:

10.1.1    Rental of **Robbins** 6.48m EPBM complete with auxiliary equipment per Annex-1 and Annex-2        $7,038,250

10.1.2    Minimum Rental Value (United States Dollars)        **$7,038,250**

10.2    The **Price** of the rental supply of **Equipment** shall be $7,038,250 USD (Seven million, seven hundred and fifty thousand, two hundred and fifty US Dollars). The above **Price** is for the complete supply of **Equipment**.is based on the following:

10.2.1 The equipment supply noted in Annex 1, the addition of Optional equipment shall be added to the rental price.

10.2.2 The duration of the rental or possession period is 22 months commencing when the equipment departs the **Robbins** workshop

10.3    The aforesaid **Price** noted is EXW **Robbins** USA Workshop

10.4    The payment terms for any optional equipment selected by JCM, or any change orders accepted by the parties, which result in an increase or decrease in the **Price** shall be

Exhibit A
Page 8 of 16

the same as the payment terms noted in article 11.  JCM shall pay within 30 days of receipt of invoice from **Robbins** the amount due at the time of ordering the optional equipment, or agreeing a change order, per the percentages defined in article 11 and subsequent payments of the Price shall be increased or decreased appropriately.

## Article 11: Terms of Payment

11.1        **Robbins** shall be entitled to the following payments from JCM as follows;

     11.1.1     $1,055,738 equal to fifteen percent (15%) of the total **Agreement** value, payable by September 13th, 2013.  JCM having paid $200,000.00 upon signing of the LOI, a payment from JCM of $855,738 shall be paid to satisfy this payment.

     11.1.2     $2,111,425.00 equal to thirty percent (30%) of the total **Agreement** value, payable upon shipment of the **Equipment** to Robbins rebuild Workshop;

     11.1.3     $703,825 equal to ten percent (10%) of the total **Agreement** value, payable thirty (30) days after receipt of **Equipment** at Robbins rebuild Workshop;

     11.1.4     $703,825 equal to ten percent (10%) of the total **Agreement** value, payable sixty (60) days after receipt of **Equipment** at Robbins rebuild Workshop;

     11.1.5     $703,835 equal to ten percent (10%) of the total **Agreement** value, payable upon Workshop testing and acceptance;

     11.1.6     $1,055,738 USD equal to fifteen percent (15%) of the total **Agreement** value, payable upon completion of 1,000 foot of tunnel excavation but not later than 150 days after EXW delivery if delay is not caused by Robbins.

     11.1.7     $703,825.00 USD equal to ten percent (10%) of the total **Agreement** value, payable monthly in the amount of $31,992, commencing at EXW Robbins factory delivery.  Rental fee due over a minimum of twenty-two (22) months or balance due at completion of boring, whichever occurs soonest.

11.2     Additional rental months, over twenty-two (22), will be charged at the same monthly rate as payment 11.1.7, $31,992 per month. Partial months will be payable pro-rata.

## Article 12: Default of Robbins

12.1     **Robbins** shall be in default; if **Robbins**:

     12.1.1     Has repudiated the **Agreement**; or

     12.1.2     Is in breach of a material obligation under this **Agreement** and does not remedy or take effective action to remedy the breach within thirty (30) days of receipt of written notice given by JCM to **Robbins**; or

     12.1.3     Suspends, without justification or excuse, the supplies for sixty (60) days or abandons the **Agreement** without any reasons attributable to JCM and does not recommence the same within thirty (30) days of the receipt of written notice from JCM to **Robbins**; or

     12.1.4     neglects or refuses to proceed diligently with the repair or the replacement of defective **Equipment** not conforming under the conditions of the warranty noted under Article 16 within thirty (30) days of a written notice by JCM to **Robbins**, unless such refusal is based upon a good faith dispute regarding whether the **Equipment** is defective.

12.2     On default by **Robbins**, JCM shall give written notice to **Robbins** warning of termination and stating the cause of the warning. If the cause of the warning is not remedied within thirty (30) days of receipt of such notice, the issue shall be discussed

and if not resolved amicably, JCM shall be entitled to terminate this **Agreement** by giving at least fourteen (14) days (to be reckoned from the date of receipt of the notice) advance written notice to such effect to **Robbins**. If **Robbins** does not agree to the termination, **Robbins** may refer the matter to dispute resolution in accordance with this **Agreement**.

## Article 13: Force Majeure

13.1     Force Majeure shall apply in this **Agreement** as follows:

13.1.1   "Force Majeure" shall mean any circumstances beyond the reasonable control of the **Party** concerned and shall include, but not be limited to, any of the following matters:   confiscation, destruction or requisition by order of any government or any public authority, war, revolution, invasion, insurrection, riot, civil commotion, mob violence, sabotage, blockage, embargo, boycott, military or usurped condition, epidemic, quarantine, accident, breakdown of machinery or facilities, denial of the use of railway, port, airport, shipping service or other means of public transport, strike or lockout or other industrial action by workers or employees, earthquake, flood, fire, or other natural physical disaster or delays beyond Robbins control in removal and shipment of the Equipment from the project it's presently excavating.

## Article 14:  Default of JCM

14.1     JCM shall be in default, if either;

14.1.1   JCM fails for at least a period of fifteen (15) days to make due payment to **Robbins** pursuant to and in accordance with the provisions of Article 11 above; or

14.1.2   JCM is in material breach of any obligation under this **Agreement** and does not remedy the breach within fourteen (14) days of notice given by **Robbins** to JCM to remedy the breach; or

14.1.3   **Robbins** is substantially delayed or prevented from continuing the supply of **Equipment** for reasons attributable to JCM and/or the **Owner** provided that such delay persists for at least thirty (30) days.

14.2     On default by JCM, **Robbins**, shall give written notice to JCM of termination and stating the cause of the warning. If the cause of the warning is not remedied within thirty (30) days of receipt of such notice, the issue shall be discussed and if not resolved amicably, **Robbins** shall be entitled to terminate this **Agreement** by giving at least fourteen (14) days (to be reckoned from the date of receipt of the notice) written notice to such effect to JCM. If JCM does not agree to the termination, JCM may refer the matter to dispute resolution in accordance with this **Agreement**.

## Article 15: Termination of Main Agreement

15.1     If JCM employment under the **Main Contract** is terminated, or if the **Main Contract** is otherwise terminated, for any reason whatsoever before **Robbins** has fully performed its obligations under this **Agreement**, then JCM may at any time thereafter by fourteen (14) days' written notice to **Robbins**, terminate this **Agreement** for convenience and thereupon comply with Articles 19 and 20 of this **Agreement**.

## Article 16:  Warranty by Robbins

16.1     **Robbins** warrants that the **Equipment** supplied pursuant to this **Agreement** shall be manufactured / fabricated and free from all defects in materials and workmanship for a period of twelve (12) months from delivery or 2,000 meters of bored tunnel, *whichever occurs soonest*.   Delays exceeding twenty four (24) successive hours caused by TBM warrantable defects shall be cause for a Time extension to the rental period shown in Article 11.2 and there shall be a suspension of rental payments due until 24 hours after the equipment resumes operation.

16.2     **Robbins** warrants that the **Equipment** shall:

(i)  be free from all latent defects in materials or workmanship;
(ii)  be free from any lien, mortgage and other third party rights.

16.3  As an express condition precedent to pursuing a warranty claim pursuant to this Article 16, JCM shall provide **Robbins** written notice of any alleged defect in the **Equipment** within forty-eight (48) hours of discovery of the alleged defect, and provide **Robbins** with a reasonable opportunity to investigate and/or cure the alleged defect.  In the event **Robbins** determines, in its sole and exclusive discretion, that a defect in materials or workmanship in the **Equipment** exists during the warranty period, **Robbins** shall at its own cost:

(i)  correct such defect in the material or workmanship in the **Equipment** by the supply of the replacement part; and
(ii)  provide supervision and technical support if requested by JCM for repair or replacement of the defective component.

JCM shall furnish all other labor, transportation charges, equipment, materials, tools or other resources, at its expense, to correct any such defects in the **Equipment**.

16.4  DISCLAIMER OF WARRANTIES – The warranties, agreements and representations set forth in this contract are exclusive and in lieu of all other warranties, agreements and representations concerning quality or performance, written, oral or implied, and all other warranties, including any warranty of merchantability or fitness for purpose, are hereby disclaimed. Under no circumstances will contingent damages, liquidated damages other than those noted in Article 6 (LDs for late delivery) or expenses, be accepted by **Robbins**.

## Article 17: Taxes

17.1  All prices noted or otherwise do not include local tax, or any other sales tax or costs that may apply and are to be borne by JCM.  Any State or Local business & occupation tax associated with this transaction is the responsibility of **Robbins**.  Any Personal Property taxes are the responsibility of the TRC as the owner of the personal property.

## Article 18: Termination

18.1  This **Agreement** can be terminated on occurrence of any of the following:

(i)  in accordance with Article 11 for default of **Robbins**;
(ii)  in accordance with Article 13 for default of JCM;
(iii)  by mutual consent of the **Parties**; and
(iv)  in accordance with Article 15 on termination of the **Main Agreement**.

## Article 19: Consequences of Termination

19.1  If the **Agreement** is terminated under Sub-Article 18.1 (i) above, **Robbins** shall be liable to refund to JCM any advance, which remains to be recovered, but in no event shall any such liability, taken together with any payments made by or damages / penalties assessed against **Robbins** through the date of termination, exceed the maximum liability set forth in Article 26 of this **Agreement**.

19.2  If the **Agreement** is terminated under Sub-Article 18.1 (ii) or 18.1 (iv) above, the consequences of termination shall be as provided in Sub-Article 19.4 below.

19.3  In case of termination by mutual consent of the **Parties** under Sub-Article 18.1 (iii) above, the terms and conditions of such termination shall be as mutually agreed between the **Parties**.

19.4  On termination of this **Agreement** under Sub-Article 18.1 (ii) and (iv) above, **Robbins** shall be paid by JCM, in so far as such amount or items have not already been covered by payments on account made to **Robbins** for:

(i)    all supplies executed prior to the date of termination at the rates and prices, if any, provided in this **Agreement**, or if there are no such rates and prices, then such amount as may be fair and equitable;

(ii)    all equipment properly delivered by **Robbins** provided **Robbins** delivers such goods EXW **Robbins** Workshop or Point of Manufacture;

(iii)    all **Equipment** supplied which has been completely manufactured; partially manufactured, procured or ordered specifically for this project;

(iv)    any other sums to which **Robbins** may be entitled under this **Agreement**;

(v)    **Robbins'** lost revenue that is justifiably due for the terminated portion of the supplies and other works, in the event of termination pursuant to Sub-Article 18.1 (ii) or 18.1 (iv).

## Article 20: Arbitration and Settlement of Disputes

20.1    In case of any dispute between the **Parties** in connection with, or arising out of this **Agreement**, the **Parties** shall attempt to settle such disputes amicably. JCM and **Robbins** will utilize their best efforts to resolve all disputes as quickly as possible by good faith negotiation. If a dispute has not been resolved to the satisfaction of both **Parties** within fourteen (14) business days of it arising, the dispute may be referred to binding arbitration pursuant to the ICC Rules described in Article 20.2 by one of the **Parties** giving written notice to the other.

20.2    Unless both **Parties** mutually agree otherwise, it is agreed that any dispute, controversy or claim arising out of or in connection with this **Agreement**, including any question regarding its existence, validity or termination, which cannot be resolved amicably, will be finally settled by binding arbitration under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with such Rules. These Rules are deemed to be incorporated by reference in this **Agreement**. The language of the proceedings will be English. The arbitration shall take place in Seattle, Washington, USA. The decision of the arbitrator(s) shall be final and binding on the **Parties**. The **Parties** may not assert any claims, demands, damages or remedies other than those expressly permitted by applicable law, and the express terms of this **Agreement**, nor shall the arbitrator(s) have any authority to consider such claims or demands, nor award any damages, remedy or relief inconsistent with or expressly prohibited by the terms of this **Agreement**.

20.3    The works under the **Agreement** shall be continued by **Robbins** during the arbitration proceedings. No payment due or payable by JCM to **Robbins** shall be withheld on account of such arbitration proceedings unless such payment is the subject of the arbitration proceedings itself.

## Article 21: Validity

21.1    The **Agreement** shall remain in force till the date of completion of this **Agreement** unless terminated earlier in accordance with Article 18 above.

## Article 22: Amendments, Effectiveness

22.1    All amendments and additions to this **Agreement** shall be made in writing signed by a duly authorized representative of each **Party** (JCM and **Robbins**).

22.2    The invalidity of any provision of the **Agreement** shall not affect the validity of the remaining provisions.

## Article 23: Exchange of Documents and Maintenance of Confidentiality

23.1    During the process of execution of the **Tendered Work**, the **Parties** hereto agree to exchange several documents and information in relation to the **Tendered Work** and they agree as follows in connection therewith:

(i)    All the documents and all information one **Party** makes available to the other concerning any aspect of the **Equipment** shall be received and examined by the other **Party** under the strict obligation of maintaining confidentiality.

(ii)      The aforesaid documents and information shall be treated as confidential information, and its contents shall be exclusively limited to the persons in charge of execution of the **Tendered Work**.

## Article 24: Indemnification by Robbins

24.1   **Robbins** shall fully indemnify, save harmless and defend **JCM** and its directors and personnel (the "**Indemnified Parties**") from and against any and all losses, costs, damages, injuries, liabilities, claims, demands and causes of action (collectively, "**Damages**"), directly arising out of and resulting from or related to third party claims associated with this **Agreement**, to the extent caused by the negligent acts or omissions of **Robbins**, and to the extent such third party claims relate to personal injury, property damage (other than to the **Equipment** itself), disease or death. **Robbins** shall not be held responsible for any consequential loss or indirect damage of any kind.

24.2   **Robbins** shall also indemnify, save harmless and defend the **Indemnified Parties** from and against any and all **Damages** with respect to the payments of taxes relating to the income of **Robbins** or other taxes required to be paid by **Robbins** without reimbursement hereunder.

24.3   **JCM** shall notify **Robbins** in writing of any third party claims for which indemnity would apply pursuant to this **Agreement**. **Robbins** shall assume on behalf of **JCM** and conduct with due diligence and in good faith the defense thereof. **JCM** shall provide support and assistance to **Robbins** in connection with the defense of any claim to which indemnity provided for herein shall apply.

24.4   Nothing in this Article 24 shall expand, modify or otherwise affect the limitation of liability and maximum liability set forth in Article 26, which shall govern (Article 26) in all instances of conflict, ambiguity or discrepancy with any other provision or terms.

24.5   The provisions of this Article 24 shall survive the termination of this **Agreement**.

## Article 25: Indemnification by JCM

25.1   **JCM** shall fully indemnify, defend and hold harmless **Robbins** and any of its subsidiaries, affiliated companies, and any of their officers, employees or agents (collectively "the **Indemnified Persons**") against any and all claims, demands, proceedings, costs, charges and expenses of any third party arising from any act or neglect of **JCM**.

25.2   In addition, **JCM** shall indemnify and hold the **Indemnified Persons** free and harmless against any and all claims, demands, proceedings, costs, charges and expenses of any third party, including any employee of **JCM** arising out of or in consequence of the execution and completion of the **Agreement** by **Robbins**.

25.3   **JCM** shall indemnify **Robbins** against any damages arising from the misuse by **JCM**, its agents, servants or workmen, of any items specified in Annex-2 or tools/tackles provided by **Robbins** and / or interference with the supply of the **Equipment** by **JCM**, its agents or workers.

25.4   The provisions of this Article 25 shall survive the termination of this **Agreement**.

## Article 26: Maximum Liability under this Agreement

26.1   Notwithstanding anything to the contrary contained herein, the maximum total liability of **Robbins** under this **Agreement**, of any and all cause or nature whatsoever, including the damages or penalties reflected in Articles 16, 19 and/or 24, however alleged or arising in relation to the subject matter of this **Agreement**, whether relating to the delivery or non-delivery of the **Equipment**, the performance or non-performance of the **Equipment** or any related services, any act or omission in the performance of **Robbins'** obligations related to this **Agreement**, or any failure by **Robbins** to perform any of its obligations under this **Agreement**, whether by way of indemnity, statute, contract,

strict liability, tort (including negligence) or any other basis in law or equity shall not exceed four percent (4%) of the **Price** stipulated in Article 10 hereof.

Except as expressly provided otherwise in this **Agreement**, **Robbins** shall in no case be liable in tort, equity, contract or statute to **JCM** for any indirect, incidental or consequential damages of any kind or description, including without limitation loss of profit, loss of revenue, loss of use, loss or opportunity, loss of productivity or efficiency, delay, disruption, interference, or other pure economic loss. In recognition of the relative risks and benefits to both **Robbins** and **JCM** in relation to the subject matter of this **Agreement**. The risks have been allocated such that **JCM** agrees, to the fullest extent permitted by law, to limit the liability of **Robbins** to **JCM** as provided for in this Article 26.1 for any and all claims, losses, costs, and damages of any nature whatsoever.  It is intended that this limitation shall apply to any and all liability or cause of action, however alleged or arising in relation to the subject matter of this **Agreement**, whether in warranty, contract, strict liability, tort or equity

26.2    At the time **Robbins** pays to **JCM**, by reimbursement, set-off or otherwise, four percent (4%) of the funds received towards the **Price** stipulated in Article 10 of this **Agreement** in discharge of its liability obligations under this **Agreement**, it shall not be obliged to pay anything else to **JCM** under any circumstances, including default or breach of the **Agreement** by **Robbins**.

## Article 27: Representations of the Parties

27.1    Each **Party** represents and warrants to the other that:

27.1.1    It is a company duly organized, validly existing and in good standing under the laws of the country of its incorporation, has the lawful power to engage in the business it presently conducts and contemplates conducting, and is duly licensed or qualified and in good standing in each jurisdiction wherein the nature of the business transacted by it makes such licensing or qualification necessary.

27.1.2    This **Agreement** has been duly and validly executed and delivered by the **Parties**. This **Agreement** constitutes a legal, valid and binding obligation of the **Parties**, enforceable in accordance with its terms, except to the extent that its enforceability may be limited by bankruptcy, insolvency, moratorium or other similar laws affecting the rights of creditors generally or by general principles of equity.

## Article 28: Governing Laws and Jurisdiction

28.1    This **Agreement** shall be construed and interpreted in accordance with and governed by the laws of the USA and the State of Washington

28.2    **JCM** hereby submits itself to the jurisdiction of the State of Washington, USA and agrees to accept service of process as if it were personally served within Washington.

28.3    The valid language for this **Agreement** and for any other communications between the **Parties** in relation hereto, is English.

## Article 29: Miscellaneous

29.1    **Delay not Waiver:** It is understood and agreed that any delay, waiver or omission by **JCM** or **Robbins** to exercise any right or power arising from any breach or default by **Robbins** or **JCM** in any of the terms, provisions or covenants of this **Agreement** shall not be construed to be a waiver by **JCM** or **Robbins** of any subsequent breach or default of the same or other terms, provisions or covenants on the part of **Robbins** or **JCM**.

29.2    **Severability:** In the event that any of the provisions, or portions or applications thereof, of this **Agreement** are held to be unenforceable or invalid by any court of competent jurisdiction, **JCM** and **Robbins** shall negotiate an equitable adjustment in the provisions of this **Agreement** with a view to effecting the purpose of this **Agreement**, and the

validity and enforceability of the remaining provisions or portions or applications thereof, shall not be affected thereby.

29.3 **Entire Agreement:** This **Agreement** contains the entire **Agreement** between the **Parties** hereto with respect to the Scope of Supply, and supersedes any and all prior and contemporaneous written and oral agreements, proposals, negotiations, understandings and representations pertaining to the subject matter hereof.

29.4 **Amendments:** No amendments to or modifications of this **Agreement** shall be valid unless evidenced in writing and signed by a duly authorized representative of the **Parties**.

29.5 **No Third Party Rights:** This **Agreement** and all rights hereunder are intended for the sole benefit of the **Parties** hereto, and shall not imply or create any rights on the part of, or obligations to, any other **Person** including the **Owner**.

29.6 **Title to Equipment:** Title to all Equipment supplied by **Robbins** in connection with this Rental **Agreement** shall vest with Robbins at all times.

29.7 **Governing Language:** Except as otherwise specifically indicated in this **Agreement**, all notices, manuals, design and engineering documents and other writings and communication required pursuant to this **Agreement** shall be in English language.

29.8 **Time Adherence:** Each of the **Parties** must maintain and perform their respective contractual obligations in a timely manner.

29.9 **Limited Disclosure about the Agreement:** This **Agreement** is not public, and its disclosure to any third party is not authorized except to the extent required for the completion of the supplies or financial reporting.

29.10 **Claims by JCM to Owner – Robbins Cooperation:** JCM will promptly inform **Robbins** of any claims for the tunneling portion of the **Tendered Works**. JCM and **Robbins** shall cooperate in submitting such claims.

**Article 30: Notices and Instructions**

30.1 All certificates, notices or orders to be given by either **Party** to the other shall be valid when given in writing by hand, first class postage pre-paid mail or by email delivery, against receipt to the following addresses:

JCM                          Mr. Glen Frank
                             JCM Northlink, LLC
                             120 – 10th Avenue East
                             Seattle, Washington 98102 USA
                             Tel. No.: 206-384-4697
                             Fax No.: 206-384-4699

Robbins                      Mr. Tyler Sandell
                             The Robbins Company
                             29100 Hall Street
                             Solon, Ohio 44139 USA
                             Tel. No.: 440-248-3303
                             Fax No.: 440-248-1702

30.2 Any such notices and other documents shall:

30.2.1 If delivered by hand, be deemed to have been given and received at the place of receipt on the date of delivery;

30.2.2 If mailed, be deemed to have been given and received at the place of receipt on the date of actual receipt. In the event of postal disruption, such notices or documents must either be delivered personally or sent by facsimile transmission.

Exhibit A

30.2.3    If sent by email transmission, be deemed to have been given and received on the date of transmission.

**IN WITNESS HEREOF,** the **Parties** hereto have caused this **Agreement** to be signed in two (2) originals as of the date of first above written by their duly authorized representatives.

| For: JCM Northlink, LLC | For: The Robbins Company |
|---|---|
| Glen Frank<br>Project Manager | Tyler Sandell<br>Sales Manager |
| Date:  9/12/13 | Date:  9/12/13 |
| Witness | Witness |