UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MAXUM INDEMNITY CO., | ) | Case No.: 1:17 CV 1968 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| THE ROBBINS COMPANY, | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

## I.   INTRODUCTION

Currently pending before the court in the above-captioned case is Plaintiff Maxum Indemnity Co.'s ("Plaintiff") Motion for Judgment on the Pleadings (ECF No. 16.) For the following reasons, Plaintiff's Motion is granted.

## II.   BACKGROUND

On September 19, 2017, Plaintiff commenced this civil action for declaratory judgment pursuant to 28 U.S.C. §§ 2201, *et seq.*, seeking a judicial declaration that it has no duty to defend or indemnify Defendant The Robbins Company ("Defendant") in the currently pending arbitration brought by JCM Northlink, LLC ("JCM") against Defendant before the International Court of Arbitration ("ICA") ("Underlying Arbitration"). (Compl., ECF No. 1.) Defendant is a designer, manufacturer, and supplier of tunnel-boring machines ("TBMs"). (*Id.* ¶ 8.) Plaintiff insures Defendant under two Commercial General Liability ("CGL") policies, Nos. GLP-6027385-01

("Primary Policy") and EXC-6001160-11 ("Excess Policy"), effective from September 1, 2015 to September 1, 2016 ("Policies"). (*Id.* ¶13.)

On May 20, 2016, JCM submitted its Request for Arbitration with the ICA against Defendant, pursuant to the arbitration clause in the Rental Agreement between Defendant and JCM. (*Id.* ¶ 9; *see* Request for Arbitration, ECF No. 1-2.) JCM's claim asserts that it suffered in excess of $40 million in damages as a result of defects in a TBM Defendant rented to it, as well as Defendant's failure to perform certain services under their agreement. (Compl. ¶ 10.) On April 12, 2016, prior to submitting the Request for Arbitration, JCM terminated the Rental Agreement for default. (*Id.*) On August 31, 2017, Defendant reported the Underlying Arbitration to Plaintiff and sought insurance coverage under the Policies. (*Id.* ¶ 12.) On November, 16, 2017, approximately two months after commencing this action, Plaintiff filed the instant Motion for Judgment on the Pleadings asserting that there is no material dispute that it has no duty under the Policies to defend Defendant in the Underlying Arbitration. (Mot. J. Pleadings, ECF No. 16.)

### III. LAW AND ANALYSIS

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." The standard for evaluating a motion for judgment on the pleadings under Rule 12(c) is identical to the standard a court applies to a motion to dismiss under Rule 12(b)(6). *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001). The court examines the pleadings of the parties and evaluates the legal sufficiency of the plaintiff's claim. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).

Matters outside the pleadings cannot ordinarily be considered. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). However, Rule 12(d) requires that, "[if], on a motion under [Rule

12(c)], matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *Constr. Helicopters, Inc. v. Heli-Dyne Sys., Inc.*, Case Nos. 88-1166, 88-1192, 1989 WL 54111, at *3–4 (6th Cir. May 23, 1989). The Rule goes on to provide that, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

As an initial matter, Defendant contends that Plaintiff's Motion should either: (1) be denied; or, alternatively, (2) the Motion should be converted to one for summary judgment and, under Rule 56(d), the court should reserve its ruling on Plaintiff's Motion "until such time as the arbitration claims are clarified sufficient for a coverage determination to be made." (Opp'n Mot. J. Pleadings 1–2, ECF No. 23.) In support of this assertion, Defendant relies on the notion under Ohio law that the duty to defend under an insurance agreement may arise subsequent to the filing of a complaint. (*Id*. at 4.) Thus, although Defendant would contend that JCM's Request for Arbitration is sufficient to raise a duty to defend, because JCM is not required to clarify its claims or damages in the Underlying Arbitration until February 15, 2018, or potentially until August 2018 at the final arbitration hearing, Plaintiff's Motion for Judgment on the Pleadings is premature. (*Id*. at 4–5.)

Under Ohio law, the duty to defend is broad and "absolute when the complaint contains any allegation that could arguably be covered by the insurance policy." *Granger v. Auto-Owners, Ins.*, 40 N.E.3d 1110, 1115 (Ohio 2015). However, it is not required that the duty to defend arise based on the allegations of the complaint and, indeed, the Ohio Supreme Court has held that the duty to defend "may arise at a point subsequent to the filing of the complaint." *Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, 557 (Ohio 1984). That court went on to explain that,

> [W]here the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.

*Id.* at 558. Thus, *Willoughby Hills* stands for the proposition that the "scope of the allegations may expand through discovery such that, while not apparent initially, the claims may become covered by the insurance." *Ferro Corp. v. Cookson Grp.*, 561 F. Supp. 2d 888, 899 (N.D. Ohio 2008). However, *Willoughby Hills* "does not stand for the proposition…that coverage may arise after the filing of the complaint where the pleadings did not create even an arguable basis for coverage." *Id.* at 899–900 (N.D. Ohio 2008) (collecting cases) (citing *Hahn's Elec. Co. v. Cochran*, Case No. 01AP-1391, 2002 WL 31111850, at *4 (Ohio App. Sept. 24, 2002) (explaining that "[c]ourts will not[…] impose a duty to defend based on allegations outside the complaint, where the complaint does not state a claim that arguably triggers coverage.")) Thus, if as Plaintiff suggests, based on the plain and clear meaning of the Policies, JCM's Request for Arbitration in the Underlying Arbitration does not arguably trigger coverage under the Policies, it will not be necessary for the court to consider matters outside of the pleadings, and the instant Motion is properly before the court as one for judgment on the pleadings. *Ferro Corp.,* 561 F. Supp. 2d at 900 (citing *Holloway Sportswear, Inc. v. Transp. Ins. Co.*, 58 F. App'x 172, 175 (6th Cir. 2003) (noting that "courts need not stretch the allegations beyond reason to impose a duty on the insurer. To do so would effectively impose an absolute duty on the insurer to provide a defense to the insured regardless of the cause of action stated in the complaint.") (internal quotations omitted)).

Here, Plaintiff contends that the Policies unequivocally do not impose a duty for it to defend Defendant in the Underlying Arbitration because: (1) JCM's claimed economic loses are not "property damage" covered under the Policies, and Defendant's alleged failure to perform its contractual obligations is not an "occurrence" covered under the Policies; (2) the Policies exclude coverage for contractual liabilities and claims for breach of contract; and (3) even if JCM's claims do constitute "property damage," the Policies explicitly exclude coverage for damage to property owned by the insured. (Mot. J. Pleadings 2–3.) The court will address each of Plaintiff's contentions in turn.

### A. "Property Damage" Caused By An "Occurrence"

The Primary Policy covers Defendant's liability for "property damage" caused by an "occurrence." The Primary Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property…or [l]oss of use of tangible property that is not physically injured." (Primary Policy 17, ECF No. 1-3.) Under the Primary Policy, an "occurrence" means, in relevant part, "an accident." (*Id.* at 16.)

Plaintiff contends that JCM's claim in the Underlying Arbitration is not covered by the Primary Policy because JCM is not seeking to recover for "property damage." (Mot. J. Pleadings 7–8.) Rather, because JCM was only renting the failed TBM from Defendant and did not own it, JCM is seeking to recover for economic losses caused by delays and cost overruns it allegedly incurred as a result of the failure of Defendant's TBM. (*Id.*) Moreover, JCM does not allege any damage to any other property belonging to it as a result of the TBM failure. (*Id.*) Finally, Plaintiff argues that the triggering event at issue here is Defendant's failure to supply JCM with a working

TBM, which is not an "occurrence," but merely Defendant's failure to do its work in accordance with its contractual obligations. (*Id*. at 8.)

Defendant responds that JCM's claims are covered by the Primary Policy because, similar to the coverage dispute addressed in *Hartzell Indust., Inc. v. Fed. Ins. Co.*, 168 F. Supp. 2d 789 (S.D. Ohio 2001), JCM is claiming "loss of use of tangible property that is not physically injured." (Opp'n Mot. J. Pleadings 6, ECF No. 23.) Thus, because JCM's claims are premised on the destruction of a bearing in Defendant's TBM, which resulted in a temporary shutdown of the entire project, JCM seeks delay damages and other "'loss of use' in the form of idled project equipment, loss of productivity, and other disruption, as well as delayed competing and operation of the project." (*Id*.)

The court agrees with Plaintiff. Although the failure of the bearing in Defendant's TBM was an "accident" within the ordinary meaning of that term, the facts of the underlying incident here do not support the conclusion that JCM suffered "property damage" from any alleged "occurrence" that would be covered under the Policies. *See Hartzell*, 168 F. Supp. at 798 (finding that the catastro[phic failure of the fan due to all six of its propellers snapping off the hub could not "reasonably be viewed as anything other than an 'accident'.") As the court in *Younglove Const., LLC v. PSD Dev't, LLC*, 767 F. Supp. 2d 820, 826 (N.D. Ohio 2011), explained, "[c]laims for economic losses deriving from defective construction sound in contract" and are not the kind of "consequential or collateral damages Ohio courts consider covered by CGL policies." As a result, courts have found no duty to defend "where damages alleged, including loss of use, lost profits and replacement costs, all related to defective work, not to any consequential damages deriving from such work." *Id.* at 826 (citing *Envtl. Expl. Co. v. Bituminous Fire & Marine Ins. Co.*, Case No. 1999-CA-00315, 2000 WL 1608908, at *6 (Oct. 16, 2000) (internal quotations omitted).

This is not like the situation in *Hartzell*, where the failure of the insured's fan, which was incorporated into the injured power company's boiler room, caused the boiler room itself to become less useful or less functional. 168 F. Supp. 2d at 794. Rather, in this case, because of the destruction of the TBM, JCM could not move forward with its project and, as a result, was not yet in need of its own equipment, which sat idle at the project site. In other words, the function of JCM's equipment was not effected, though JCM's need for its equipment was temporarily postponed because Defendant allegedly failed to provide JCM the benefit of its bargain. That is a claim that sounds in contract, which is clearly excluded from coverage under the Policies, as discussed in more detail below. *Nat'l Eng'g & Contracting Co. v. U.S. Fidelity & Guar. Co.*, Case No. 03-AP-435, 2004 WL 1103993, at *6 (Ohio Ct. App. May 11, 2004) (emphasizing that "a commercial liability policy is simply not a performance bond and is not intended to insure the contractor's work performed or work product."); *see also Younglove*, 767 F. Supp. 2d at 826 (explaining that "[c]laims for economic losses deriving from defective construction sound in contract.")

### B. Exclusion of Contractual Obligations and Breach of Contract

The Primary Policy specifically excludes coverage for property damage "for which the [i]nsured is obligated to pay "damages" by reason of the assumption of liability in a contract or agreement." (Exclusion b, Primary Policy 1.) However, that exclusion "does not apply to liability for damages "[t]hat the [i]nsured would have in the absence of the contract or agreement." (*Id.*) In determining insurance coverage, the issue examined by Ohio courts is "not whether the cause of action is one for contract or tort but whether the damages may be characterized as contractual in nature or whether they are consequential property damage." *Burlington Ins. Co. v. PMI Am., Inc.*,

862 F. Supp. 2d 719, 729 (S.D. Ohio. 2012) (citing *Younglove Constr., LLC v. PSD Dev., LLC*, 767 F. Supp. 2d 820, 826–27 (N.D. Ohio 2011)).

Here, while it is true that JCM is not required to clarify the precise nature of its claim until February 15, 2018 or later, in its Request for Arbitration, JCM clearly characterizes its claim for damages as one which sounds in contract. For example, although, as Defendant points out, JCM failed to itemize or categorize the exact nature of its damages, it has alleged that they are in excess of $40 million as a result of Defendant's breach of contract. (*See* Request for Arbitration 2 ("…JCM terminated the Rental agreement for default. JCM submits its claim for at least $40,242,052.20 in damages as a result of TRC's performance on this contract.") While Defendant maintains that at least some of the allegations in the Request for Arbitration may support a claim or claims based on tort theories of liability, the duty to defend is not triggered "merely because the allegations in the complaint indicate that another cause of action *might* have happened." *Ferro Corp.*, 561 F. Supp. 2d at 898 (emphasis in original). Even those allegations upon which Defendant relies are clearly couched in terms of obligations arising from JCM and Defendant's contractual relationship. (*See*, *e.g.*, Request for Arbitration 3 ("TRC also promised to execute Scope of Supply with due care and diligence *in accordance with the provisions of this Agreement*.") (emphasis added); *compare with* Primary Policy § 2(b) (excluding "'property damage' for which the [i]nsured is obligated to pay 'damages' by reason of the assumption of liability in a contract or agreement.").)

### C. Property Owned by Insured

Finally, even if, as an initial matter, JCM's claim for damages could be construed as "property damage" caused by an "occurrence" and sounding in tort, Defendant's coverage would nevertheless be precluded under the Policies due to the exclusion for damage relating solely to a

-8-

contractor's own work. Exclusion j, Primary Policy 3 (excluding coverage for "property damage" to property owned by the insured, "including any costs or expenses incurred by [the insured]…for repair, replacement, enhancement, restoration[,] or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property."); *Hahn's Elec. Co.*, 2002 WL 31111850, at *7 (finding that allegations concerning contractor's negligent performance of its work and a breach of its duty to perform in a workmanlike manner were arguably property damage caused by an occurrence but that, nonetheless, there existed no duty to defend where standard business liability policy excluded coverage for "damages relating solely to a contractor's own work.")

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 16) is granted.

IT IS SO ORDERED.

                                              */s/ SOLOMON OLIVER, JR.*
                                              UNITED STATES DISTRICT JUDGE

March 21, 2018